IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-298-F

DAVID ROBINSON, )
)
Plaintiff, )
)
vs. ) **ORDER**
)
HARRISON TRANSPORTATION )
SERVICES, INC. and HARRISON )
GLOBAL LLC, and STEPHEN BRADLEY )
JACKSON, )
)
Defendants. )
_____ )

Before the court is the parties' Joint Motion for Approval of Settlement Agreement.[1] [DE 25]. The parties ask the Court to approve the Waiver, Release and Settlement Agreement (the "Agreement"), wherein Defendants agree to pay Plaintiff a gross sum of $22,903.34 in exchange for release of all claims. [DE 25-1 at 2].

### I. APPLICABLE LAW

Under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), any employer that violates the requirement to pay minimum or overtime wages "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). As such, the FLSA's provisions are

---

[1] The parties' joint motion is supported by the declaration of Eric L. Doggett, plaintiff's counsel. *See* Doggett Decl. [DE 25-2].

mandatory and are not subject to bargaining, waiver, or modification by contract or settlement absent the approval of the district court or the Secretary of Labor. 29 U.S.C. § 216(b)-(c); *see Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 462 (4th Cir. 2007).

A proposed FLSA settlement should be approved if it reflects a "fair and reasonable" compromise over a bona fide dispute. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-CV-1310, 2009 U.S. Dist. LEXIS 89136, at *23 (E.D. Va. June 23, 2009) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the possibility of fraud or collusion in the agreement; (4) the experience of plaintiff's counsel; (5) the probability of plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014); *accord Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *29. Finally, the court must also determine whether the proposed settlement furthers or "impermissibly" frustrates implementation of the FLSA in the workplace. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *accord Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015); *Altenbach v. The Lube Ctr., Inc.*, No. 08-2178, 2013 U.S. Dist. LEXIS 1252, at *7 (M.D. Pa. Jan. 4, 2013).

## II. DISCUSSION

### A. Bona Fide Dispute

A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial. *See Lynn's Food Stores*, 679 F.2d at 1354. "In deciding whether a

bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Amaya Amaya v. Young & Chang, Inc.*, No. PWG-14-749, 2014 U.S. Dist. LEXIS 99591, at *5 (D. Md. July 22, 2014).

Plaintiff initiated this action on July 3, 2015, alleging wage claims under the FLSA and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.* ("NCWHA"), and breach of contract under North Carolina common law. Plaintiff was formerly employed by Harrison Transportation Services, Inc. as a limousine driver from August 2012 to December 19, 2014. Compl. ¶ 6 [DE 1]. According to Plaintiff, Defendants failed to pay, *inter alia*, overtime in violation of § 207 of the FLSA – a claim Defendants dispute.[2] Ans. ¶¶ 77-79 [DE 13]. In particular, Defendants contend that Plaintiff is not entitled to overtime compensation because his employment falls within the Motor Carrier Act ("MCA") exemption from the FLSA's overtime requirements.[3] *See id.* at 12; Eric L. Dogget Decl. ¶ 11 [DE 25-2]. Thus, the pleadings, along with the parties' representations in the Agreement and supporting documents, establish that a bona fide dispute exists between the parties as to Defendants' liability under the FLSA for overtime compensation.

---

[2] Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *accord Christopher v. SmithKline Beecham Corp.*, __ U.S. __, 132 S.Ct. 2156, 2162 (2012). If an employer violates § 207, he is liable for unpaid overtime compensation and an equal amount of liquidated damages. 29 U.S.C. § 216(b).

[3] The overtime provisions of the FLSA do not apply to, *inter alia*, "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act]." 29 U.S.C. § 213(b)(1).

*Robinson v. Harrison Transp. Servs., Inc., et al*
No. 5:15-CV-298-F
Page 4

### B. Fairness & Reasonableness

The court now considers whether the proposed settlement represents a fair and reasonable compromise of the parties' bona fide dispute.

1. Extent of Discovery Conducted

A scheduling order was entered in this matter on September 23, 2005, setting the discovery deadline for July 29, 2016. [DE 16]. The parties report that they "provided extensive documentation regarding claims and defenses in their respective Initial Disclosures." Decl. Eric. L. Doggett ¶ 12 [DE 25-2]. The parties report further that they have not taken deposition testimony; however, they have propounded written discovery and exchanged documents, allowing them to "clarif[y] their respective theories of the case." *Id.*; Joint Mem. at 4 [DE 26]. Although the case remains in the discovery stage, the court finds that the parties conducted sufficient discovery to "fairly evaluate the liability and financial aspects of [the] case." *Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *31 (citation omitted).

2. Stage of Proceedings

The parties state they would necessarily incur significant additional expense were this case to continue in litigation, including the costs of numerous depositions, dispositive motions and a possible trial. While the parties have not engaged in mediation or any motion practice with the exception of the instant motion, the court finds they have an adequate appreciation of the merits sufficient to warrant reasonable settlement negotiations.

3. Absence of Fraud or Collusion

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Id.* Here, there is no evidence that the parties' settlement is the product of fraud or collusion. The parties agreed to the settlement after

engaging in informed, arms-length negotiations over a five-month period. Accordingly, the Agreement appears to be the product of vigorous representation and negotiations by counsel for both parties.

4. Experience of Plaintiff's Counsel

Plaintiff's counsel, Eric L. Doggett, lacks extensive employment law experience, having only practiced for seven years. That said, he has litigated cases in this district in the past, including FLSA cases. *See, e.g., Anderson v. Crandell's Enters., Inc.*, No. 5:15-CV-272-BO (E.D.N.C. filed June 19, 2015); *Stovall et al v. Murphy Oil USA, Inc.*, 5:12-CV-450-D (E.D.N.C. filed July 19, 2012). Mr. Doggett's opinion and evaluation of the reasonableness of the Agreement and his recommendation to his client that he accept it is some evidence of the reasonableness of the settlement. *See Devine v. City of Hampton*, 2015 U.S. Dist. LEXIS 177155, at *39-40 (E.D. Va. Dec. 1, 2015) (stating "although the court 'is not bound by counsel's opinion, [it] is nonetheless entitled to great weight'" (quoting *In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002))). The court finds that Mr. Doggett possesses sufficient knowledge of the applicable procedural and substantive law, enabling him to evaluate the strength of Plaintiff's case and provide competent legal advice.

5. Success on the Merits

In addressing the probability of Plaintiff's success on the merits, the parties' motion asserts in conclusory fashion that they dispute the applicability of the MCA exemption. If the case were to proceed, Defendants would bear the burden of proving "by clear and convincing evidence" that Plaintiff's job fell within the MCA exemption. *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015). Accordingly, "[t]he employer should articulate the reasons for disputing the employee's right to . . . overtime, and the employee must articulate the reasons

justifying his entitlement to the disputed wages." *Dees*, 706 F. Supp. 2d at 1241. Here, the parties' memorandum is devoid of any meaningful discussion of their respective positions as to the probability of Plaintiff's success on the merits. The parties' submission also lacks any declarations, affidavits or exhibits substantiating their positions.[4] Without more, the court cannot determine whether Defendants will "extract a disproportionate discount on FLSA wages in exchange for an attenuated defense to payment." *Id.*

6. Settlement Amount versus Potential Recovery

In order to determine whether a settlement agreement is fair, the court must have "some knowledge of the value of the released claims" otherwise "the fairness of the compromise remains indeterminate." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010). Accordingly, "[t]he request for approval of an FLSA settlement agreement should include details as to the parties' estimate (estimates, if the parties disagree) of the number of hours worked at issue and the applicable wage." *Deas v. Interventional Pain Inst., LLC*, No. 15-0281, 2015 U.S. Dist. LEXIS 121072, at *3 (D. Md. Sept. 11, 2015).

The parties' memorandum provides no formula or reasoning in support of the specified sum awarded to the Plaintiff under the Agreement. As such, the court cannot approximate Plaintiff's potential recovery were he to prevail on the merits. Without this information, the court cannot know the extent to which Plaintiff's claim of unpaid overtime would be compromised by the settlement and, consequently, it cannot assess whether any such compromise is reasonable. *See Galvez v. Americlean Servs. Corp.*, No. 1:11-CV-1351, 2012 U.S. Dist. LEXIS 68001, at *7-8 (E.D. Va. May 15, 2012) (noting inability to assess reasonableness of proposed settlement amount as court lacked "information as to Plaintiffs' regular rates of pay or the number of hours

---

[4] Mr. Doggett's declaration does not address the merits of Plaintiff's claims to any helpful degree.

Plaintiffs worked . . . for which they were allegedly uncompensated"); *compare Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *44 (approving settlement where the proposed settlement agreement "describe[d] in detail the formula the [p]arties negotiated to determine the value of overtime worked by Plaintiffs").

**C.    Furtherance of the FLS**

The proposed settlement's "release" and "communication" provisions are also obstacles to court approval.

1.    Release Provision

The release provision provides, in pertinent part, that:

> Robinson, intending to be legally bound, and for and in consideration of the payments made and obligations undertaken pursuant to this Agreement, does for himself . . . hereby irrevocably remise, release and forever discharge Stephen Bradley Jackson, Harrison Transportation Services, Inc. and Harrison Global LLC from any and all actions and causes of action . . . matured or unmatured, including but not limited to any claims based upon, arising from or relating to his employment relationship with Harrison Transportation Services, Inc. and/or Harrison Global LLC or the termination of that relationship, and from any and all other claims of any nature whatsoever against any Released Party, whether known or unknown . . . , including but not limited to claimed violations of fair employment practices, anti-discrimination, or civil rights laws (including but not limited to any claims of discrimination on the basis of race, sex, age, religion, national origin, sexual orientation or sexual preference, handicap, disability, veteran status or any other protected classification), claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; 42 U.S.C. § 1981; the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.; claims under the Worker Adjustment and Retraining Notification Act or the plant closing laws of any state; the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, et seq.; claims for wrongful discharge, breach of contract, privacy claims, defamation claims, tort claims, statutory claims; constitutional claims; claims for wages, back wages, salary, vacation pay, benefits of any kind, bonuses, draws, incentive compensation, commissions, reimbursement of expenses, quantum meruit, tortious interference with contract, negligent retention and supervision, intentional and negligent infliction of emotional distress, and any other state or federal

> statutory or common law theories, prior to the date of execution of this Agreement, which he or anyone claiming by, through or under him in any way might have or could claim against any Released Party.

Agreement ¶ 3 [DE 25-1]. The scope of the Agreement's general release is impermissibly overbroad, purportedly waiving any possible claim against Defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues. *See Moreno*, 729 F. Supp. 2d at 1351 ("[A]n employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA."). There has been no showing that Plaintiff was or will be independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due, including, among others, claims for discrimination under the Age Discrimination in Employment Act, Title VII, and tort and wrongful discharge claims. Nor has there been a showing that Plaintiff has a full understanding of what he is releasing in exchange for a settlement payment. *See Lopez*, 96 F. Supp. 3d at 181 (stating it "will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute").

2. <u>Communications Provision</u>

> The "communications" provision provides as follows:
>
> Robinson and his attorney have not and shall not at any time or in any manner (directly or through another person), communicate or disclose the terms of this Agreement on any social media platform, to any media source, or to any former or current employee of any Released Party.

Agreement ¶ 8 [DE 25-1]. Nondisclosure provisions thwart "Congress's intent . . . both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." *Dees*, 706 F. Supp. 2d 1245. The court finds logical and compelling the rationale advanced in *Lopez* for rejecting the Agreement's "communications"

provision:

> "[T]he public filing of the settlement in this case, standing alone, is unlikely to benefit low-wage workers. Documents available via [the court's electronic docket] are almost as obscure for some people, including many whom the FLSA aims to protect, as paper courthouse filings were in the pre-digital age. *Pragmatically, the best way for a worker to learn about his or her employment rights is directly or indirectly from a co-worker or an outside organization.* Yet non-disclosure provisions prevent workers from using a win to publicize both the wrongdoing of the employer and the possibility of success more generally. For these reasons, a non-disclosure agreement in an FLSA settlement, even when the settlement papers are publically available on the Court's docket, is contrary to well-established public policy because it inhibits one of the FLSA's primary goals – to ensure that all workers are aware of their rights.

*Lopez*, 96 F. Supp. 3d at 179-80 (emphasis added) (footnotes and quotation marks omitted); *see, e.g.*, *Davitashvili v. Beacon Van Line & Storage, Inc.*, No. 15-CV-5575, 2016 U.S. Dist. LEXIS 68295, at *7 (E.D.N.Y. May 23, 2016) (holding provision in proposed settlement agreement that prevented plaintiff from disclosing "the terms and background of the [settlement] [a]greement to fellow workers" conflicted with "well-established public policy"), *adopted*, 2016 U.S. Dist. LEXIS 79248 (E.D.N.Y., June 17, 2016).

### D. Attorney's Fees and Costs

Under the FLSA, the court is authorized to award "a reasonable attorney's fee to be paid by the defendant, and costs of the action," in addition to any judgment awarded to the plaintiff. 29 U.S.C. § 216(b); *see Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-CV-00058, 2010 U.S. Dist. LEXIS 47511, at *3-4 (W.D. Va. May 5, 2010) ("[T]he language of the FLSA contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" (quoting *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946))). To determine the reasonableness of an attorney's fee award in a FLSA action, judicial review is required "to assure both that counsel is compensated adequately and that no

conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Poulin*, 2010 U.S. Dist. LEXIS 47511, at *3 (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)).

Here, the proposed settlement provides for payment of $11,666.66 in attorney's fees and $430.00 for costs, for a total payment of $12,096.66. Agreement ¶ 1(a)-(b) [DE 25-1]. Given the parties' failure to demonstrate that the proposed settlement is a fair and reasonable resolution of this action, the court finds that a ruling on the propriety of the fee award and costs requested by Plaintiff's counsel is premature.

### III. CONCLUSION

For the reasons stated above, it is ORDERED as follows:

(1) The parties' Joint Motion for Approval of Settlement Agreement [DE 25] is DENIED without prejudice; and

(2) The parties shall file a renewed joint motion seeking approval of a revised settlement agreement which complies with the mandates of this Order no later than **July 20, 2016**. Failure to file a renewed joint motion within the time provided will result in the court placing this case back on the trial docket.

SO ORDERED.

This the 30th day of June, 2016.

/s/ James C. Fox
JAMES C. FOX
Senior United States District Judge